IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INNOVATIVE METAL CRAFT, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:17-cv-138 |
| v. | ) ) | |
| JON WHALEY and THE BARNDOOR HARDWARE STORE, LLC, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Pending before the Court in the above-captioned matter is a motion by the Defendants, Jon Whaley ("Whaley") and The Barndoor Hardware Store, LLC ("BDHS"), for attorney's fees and costs, following this Court's entry of partial summary judgment in their favor and against Plaintiff, Innovative Metal Craft ("IMC"). ECF No. 107. For the reasons that follow, the Defendants' motion will be denied.

### I.  Factual and Procedural History

The instant litigation arose out of a failed business relationship between Timothy Haskins, the owner of IMC, and Whaley, the record owner of BDHS. Whaley was employed by IMC from in or around August 2014 to some point in late 2016 or early 2017. During this time, Whaley's primary responsibilities were to run IMC's office and assist with sales and marketing.

In the spring of 2015, Whaley suggested to Haskins that IMC utilize the scrap materials from its spiral staircase manufacturing process to manufacture barn door hardware. In August of 2015, Whaley, while still employed by IMC, registered the domain name

"www.thebarndoorhardwarestore.com." Whaley later formed BDHS as a limited liability company on January 29, 2016 and, allegedly unbeknownst to Haskins, named himself (Whaley) as the owner and sole member of BDHS.

During the time that Whaley remained in IMC's employ, BDHS and IMC had an ongoing business relationship, the exact nature of which is disputed by the parties. Throughout most or all of 2016, IMC manufactured and supplied barn door hardware for BDHS to sell, and BDHS utilized IMC's employees to perform certain services. In return, Whaley made multiple payments to IMC, and sometimes to Haskins directly; however, no set prices were established, nor were invoices generated, for the parts and labor that IMC provided. Whaley retained BDHS's profits and maintained that he had informed Haskins that he (Whaley) was forming a separate business entity in order to market and sell barn door hardware on his own behalf. Haskins, on the other hand, claimed that he and Whaley had discussed only the possibility of IMC forming a new business division with the goal of insulating the barn door hardware business from IMC's judgment creditors and tax lien holders. Accordingly, Haskins believed that the payments received from BDHS were business distributions made to himself in his capacity as owner of the company.

In May 2017, IMC initiated this litigation with the filing of a five-count complaint against BDHS and Whaley. The complaint set forth a claim under the Lanham Act, 15 U.S.C. §1125(a), at Count I and related claims for injunctive relief (Count II), unfair competition (Count III), breach of fiduciary duty (Count IV), and conversion (Count V).

After a period of discovery, the parties filed cross-motions for partial summary judgment. IMC moved for summary judgment relative to the conversion claim at Count V. Whaley and BDHS requested an entry of summary judgment on the Lanham Act claim at Count I and

dismissal of the remaining claims for lack of jurisdiction. Alternatively, Defendants sought an entry of summary judgment relative to Counts I through IV and dismissal of the conversion claim at Count V.

On April 29, 2020, the undersigned entered a Memorandum Opinion and Order granting summary judgment in favor of Whaley and BDHS relative to IMC's Lanham Act claim. ECF Nos. 105, 106. The Court declined to exercise supplemental jurisdiction over all remaining state law claims and dismissed them without prejudice so that the parties could litigate those claims in state court. *Id*.

In disposing of Count I, the Court acknowledged that IMC was predicating its Lanham Act claim upon an alleged infringement of its "trade dress." The Court found this theory "untenable as a matter of law" for multiple reasons. ECF No. 105 at 10. First, IMC had not specifically asserted its trade dress theory in the complaint; instead, IMC articulated this theory for the first time in its summary judgment brief. Thus, the Court opined that this tactic could arguably be viewed as an improper attempt by IMC to retroactively amend its pleading. Next, accepting the claim at face value, the Court found that many of the items that formed the basis of IMC's claim – such as the business's trade name, the web address www.thebarndoorhardwarestore.com, the email domain name spiralstairsofamerica.com, and certain unspecified "channels of commerce" – were not items that constituted protectable "trade dress." ECF No. 105 at 10-11. Further, assuming that certain distinctive, ornamental features on IMC's website, social media pages, or third-party vendor sites might constitute protectable trade dress, the Court found that IMC "failed to articulate or produce evidence of the specific design aspects it is seeking to protect." Id. at 11. And even when it construed IMC's evidence of alleged infringement in the most favorable light, the Court found that, at most,

> Whaley and BDHS may have implicitly or explicitly appropriated aspects of IMC's business for use on the BDHS website and social media pages; however, such evidence is insufficient to establish that IMC's own website, social media pages, third-party vendor sites, or other "channels of commerce" have a specific "composite look" that is subject to protection under the Lanham Act.

Id. at 12. In addition, recognizing that protectable trade dress includes only ornamental (as opposed to functional) features, the Court observed that IMC had failed to delineate those portions of its website and third-party vendor sites that are non-functional, and thus potentially protectable trade dress. Id. at 12-13. Finally, the Court found that IMC had offered "nothing in the way of evidence to suggest that the alleged trade dress elements are so inherently distinctive that they would cause consumers to identify *IMC* as the source of the hardware products being sold." Id. at 16 (emphasis in the original). Finding no genuine issue of material fact relative to IMC's Lanham Act claim, the Court granted Defendants' motion for partial summary judgment relative to Count I. Id.

Following the Court's ruling, Defendants filed the instant motion for attorney's fees and costs. ECF No. 107. The matter has been fully briefed and is now ripe for resolution.

**II.     Discussion**

Section 35 of the Lanham Act gives courts the discretion to award attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). The Supreme Court has held that an "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014*); see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314-15 (3d Cir. 2014) (following *Octane Fitness* and stating "cases are 'exceptional' under the Lanham

Act 'when (a) there is an unusual discrepancy in the merits of the positions taken by the parties [,] or (b) the losing party has litigated the case in an 'unreasonable manner.'").

There is "no precise rule or formula" for making this determination. *Octane Fitness*, 134 S. Ct. at 1756. "Whether litigation positions or litigation tactics are 'exceptional' enough to merit attorneys' fees must be determined by district courts 'in the case-by-case exercise of their discretion, considering the totality of the circumstances.'" *Fair Wind*, 764 F.3d at 315 (quoting Octane Fitness, 134 S. Ct. at 1756). Some considerations that may help to illuminate this inquiry include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S. Ct. at 1756 n.6 (citation omitted).

After due consideration of the parties' respective positions, the Court is not persuaded that the instant case is so "exceptional" as to warrant fee shifting under Section 35 of the Lanham Act. In weighing considerations such as whether IMC's claim was frivolous or objectively unreasonable, the Court is cognizant that certain aspects of trade dress infringement law are somewhat elusive, subjective, or inherently incapable of precise definition. As the Court previously observed, "trade dress" is defined in this circuit as "the overall look of a product or business." ECF No. 105 at 7 (quoting Fair Wind Sailing, 764 F.3d at 309). "Trade dress is generally classified into the categories of either 'product design' (also known as 'product configuration') or 'product packaging,' and occasionally a 'tertium quid,' a third, indeterminate catchall." Id. at 8 (citation and internal quotation marks omitted). And, while some courts have extended the concept of trade dress to include websites that portray a certain "look and feel," this concept is itself inherently subjective. *See id*. (citing authority).

Judged against these somewhat nebulous standards, this Court ultimately found IMC's Lanham Act claim deficient in several respects. At the same time, however, this case did not involve a typical run-of-the-mill Lanham Act dispute between two entirely independent businesses, each with separately generated and competing "trade dress." Here, IMC's claim arose in the context of a spin-off entity that IMC essentially claimed was stolen out from under it by a former employee. Further complicating matters was the parties' apparent failure to reduce any aspect of their business arrangement to writing, resulting in a muddled and underdeveloped factual record. The atypical context of this case did not, *per se*, render the Lanham Act inapplicable, but it rendered this case distinguishable from other prototypical Lanham Act cases, making the legal analysis less straight-forward. That the issues were not completely "cut and dry" is borne out by the fact that Defendants invested more than 180 hours in legal work defending the Lanham Act claim. At some point defense counsel also perceived a need to consult an attorney who specializes in these issues. Though Count I was ultimately found to be untenable, Defendants apparently did not consider the claim so facially implausible as to seek dismissal at the Rule 12(b)(6) stage. In this Court's estimation, the disparities in the merits of the parties' respective positions is not so unusual, and IMC's claim was not so objectively unreasonable or frivolous, as to warrant an award of attorneys' fees in this case.

The Court also finds that IMC did not litigate its Lanham Act claim in an unreasonable manner, despite the Court's observation that IMC had arguably attempted to amend its pleading through assertions made in its summary judgment brief. While the precise articulation of IMC's theory did evolve over time, the Court does not perceive that this was done in bad faith, nor does it believe that Defendants were unfairly prejudiced as a result. IMC clearly pled a Section 43(a) violation in Count I of the complaint, which would encompass a claim for alleged infringement

of its trade dress.  Moreover, the complaint was specific and detailed, such that Defendants were on notice from the beginning of the case as to the factual underpinnings of IMC's grievance.  As noted, Defendants did not challenge IMC's pleading, either by way of seeking dismissal or by way of seeking a more definite statement of the Section 43(a) claim. During the course of discovery, Defendants had ample opportunity to flesh out IMC's Lanham Act theory, beyond merely inquiring about protectable trademarks. To the extent that discovery problems arose in this case, these were largely the product of actions by Defendants' or their original counsel.  Given all of these circumstances, it is perhaps not surprising that the first specific articulation of IMC's "trade dress infringement" theory arose at the summary judgment stage.  In fact, if IMC had been able to properly support such a claim, it is possible that the Court might have granted IMC leave to amend its complaint, given the liberal amendment policies of Rule 15.  For all of these reasons, the Court does not perceive that IMC litigated Count I in bad faith or in an objectively unreasonable manner.

     Nor does the Court perceive a need in the particular circumstances of this case to award fees as a means of advancing considerations of compensation and deterrence.  As noted, this case arose out of atypical circumstances in which the parties' complicated business arrangement was apparently never completely fleshed out or reduced to writing.  As a result, it is not surprising that major disputes arose and the relationship broke down. When the facts are viewed in the light most favorable to IMC, it appears that IMC has a colorable grievance, and it remains to be seen whether IMC will prevail on any of its alternative claims.  For the reasons discussed, however, it does not appear to the Court that IMC litigated its Lanham Act claim in bad faith or in an unreasonable manner.  Therefore, the Court perceives no basis for awarding attorney's fees or costs as a means of compensating Defendants or deterring future misconduct.

**III.	Conclusion**

Based upon the foregoing reasons, the Defendants' motion for attorneys' fees and costs will be denied.  An appropriate order follows.

		_____
		Susan Paradise Baxter
		United States District Judge